WEST, Executor, Appellant, vs. TAX COMMISSION, Respondent.

*March 9—April 5, 1932.*

For the appellant there was a brief by *Williams & Foster* of Fond du Lac, and oral argument by *A. W. Foster*.

For the respondent there was a brief by the *Attorney General* and *F. C. Seibold,* assistant attorney general, and oral argument by *Mr. Seibold*.

OWEN, J.   On January 1, 1926, Walter A. West owned 1,080 shares of the stock of the Wisconsin Butter and Cheese Company, a Wisconsin corporation, of the par value

of $100 per share. Its fair value on January 1, 1911, was $169,557. About January 19, 1926, this company sold all of its property and assets to the United Milk Products Company, a Delaware corporation. Shortly thereafter the Wisconsin Butter and Cheese Company proceeded to liquidate, in pursuance of which it made distributions of its property and assets to its stockholders. Between February 2, 1926, and March 23, 1926, Walter A. West received cash distributions in the sum of $71,250, 600 shares of the preferred stock of the United Milk Products Corporation of the par value of $100 per share, and 600 shares of the common stock of said corporation of no par value. He died May 29, 1926, and subsequent to January 1, 1927, his executors made a report of income disclosing (a) the income, deductions, and exemptions of decedent for the period from January 1, 1926, to date of his death, May 29, 1926; (b) the income and deductions of Laura R. West, widow of the deceased, for the full calendar year 1926; and (c) the income and deductions of executors of the estate of W. A. West, deceased, from May 29, 1926, to December 31, 1926.

The principal question involved upon this appeal is whether the liquidating dividends received by the deceased prior to his death from the Wisconsin Butter and Cheese Company are subject to an income tax. The appellant contends that this question must be determined by the provisions of the Statutes of 1925 relating to the taxation of income. It is pointed out that by sec. 71.02 (2) (b) of the Statutes of 1925 taxable income included "All dividends derived from stocks and all interest derived from money loaned or invested in notes, mortgages, bonds or other evidence of debt of any kind whatsoever; provided, that the term 'dividends' as used in this section shall be held to mean any distribution made by a corporation, joint stock company or association, out of its earnings or profits accrued since

January 1, 1911, and paid to its shareholders whether in cash or in stock or property of the corporation," etc., and that by the provisions of sec. 71.04 (4) there was allowed as deductions "Dividends or incomes received by any person from stocks or interest in any corporation, joint stock company or association, the income of which shall have been assessed [to the corporation] under the provisions of this act." It is contended that, as the corporation at all times paid an income tax upon its earnings or profits, no dividends received by the stockholders from the corporation are subject to a tax under the law as it stood in 1925, and which was the law of this state at the time of the death of Mr. West and at the time these liquidating dividends were received.

Whether liquidating dividends were taxable under the 1925 law would present an interesting question did that law govern the situation. As was said in *Hellmich v. Hellman,* 276 U. S. 233, at p. 236 (48 Sup. Ct. 244) :

"It is true that if sec. 201 (a) stood alone its broad definition of the term 'dividend' would apparently include distributions made to stockholders in the liquidation of a corporation—although this term, as generally understood and used, refers to the recurrent return upon stock paid to stockholders by a going corporation in the ordinary course of business, which does not reduce their stock holdings and leaves them in a position to enjoy future returns upon the same stock."

In *Langstaff v. Lucas,* 9 Fed. (2d) 691, at p. 694, speaking of sec. 201 of the federal revenue act, the court says :

"This section strips distributions made to stockholders in liquidation of a corporation of all disguises and declares that they shall be considered for what they in effect are—purchases of all their outstanding stock by the liquidating corporations, and not dividends as generally understood."

We make this reference to indicate that we would be confronted with rather an elusive question if we were required

to determine whether liquidating dividends were immune from an income tax, or, perhaps more properly stated, whether they constituted permissible deductions under the 1925 law.

However, the income tax law was amended in several substantial particulars by ch. 539, Laws of 1927, effective August 17, 1927. By sec. 2 of that law there was added to sec. 71.02 the following provision:

"Amounts distributed in liquidation of a corporation shall be treated as payment in exchange for the stock, and the gain or loss to the distributee resulting from such exchange shall be determined under the provisions of this paragraph and section 71.02 (2) (d). No amounts received in liquidation shall be taxed as a gain until the distributee shall have received amounts in liquidation in excess of his cost or income tax basis provided in section 71.02 (2) (d), and any such excess shall be taxed as gain in the year in which received."

By sec. 27 of ch. 539, Laws of 1927, it was provided that "This act shall apply to incomes received in the years 1926 and 1927 or corresponding two fiscal years and annually thereafter. The usual income tax assessment and tax rolls as provided in chapter 71 of the Statutes of 1925 shall not be prepared or certified during the year 1927 and the principal assessment and tax rolls issued under the provisions of chapter 71 of the Statutes as amended by this act shall be issued on June 1, 1928, except that assessment and tax rolls may be prepared and issued from time to time as provided by this act, during the year 1927 and during the first five months of 1928 for the purpose of certifying for collection assessments of back taxes, and income taxes of persons reporting on fiscal year basis."

Thus we see that upon the enactment of ch. 539, Laws of 1927, income tax assessors were enjoined to proceed no farther in the matter of assessing incomes or computing income taxes under the 1925 law. If proceeding in due course, they were engaged at that time in perfecting the income tax

rolls which were to be delivered to the county treasurers December 1, 1927. *State ex rel. Kieckhefer v. Cary,* 186 Wis. 613, 203 N. W. 397. This work on their part was discontinued by ch. 539, Laws of 1927. Taxes imposed upon incomes were thereafter to be computed in accordance with the 1927 law. It is said that this law, if retroactive, is unconstitutional. That it was intended to be retroactive in the sense above stated there can be no doubt, in the face of the absolute provision of sec. 27 of that chapter above quoted. That the fact that it was made retroactive does not render it unconstitutional is equally well settled. The first income tax act passed, operated upon income retroactively. It imposed a tax upon income already earned for that portion of the year 1911 intervening between January 1st and the passage of the act. The contention that this rendered the act unconstitutional was summarily dismissed by the court as too trivial to warrant discussion. *Income Tax Cases,* 148 Wis. 456, at p. 514 (134 N. W. 673, 135 N. W. 164). This question received more extended consideration in *State ex rel. Globe Steel Tubes Co. v. Lyons,* 183 Wis. 107, 197 N. W. 578, with like result. The supreme court of the United States holds that a tax imposed upon income already earned does not offend against the constitution of the United States. *Cooper v. U. S.* 280 U. S. 409, 50 Sup. Ct. 164. The legislation of this state has frequently imposed income taxes upon income already earned. Such was the surtax provided for the payment of the soldiers' bonus by ch. 667, Laws of 1919, and such also is the surtax provided for emergency relief by ch. 29, Laws of the special session of 1931. By our present discussion we have perhaps accorded to appellant's contention a dignity to which the court did not consider it entitled in the *Income Tax Cases,* but we have done so in the hope of placing the question at rest.

Appellant argues that the only purpose of making the 1927 law applicable to 1926 income was that of introducing a basis for income taxes computed upon a three-year average, and that it was not the intent of the law to make it retroactive for any other purpose. Unlike the provision under consideration in 186 Wis. 613, 203 N. W. 397, the provisions of sec. 27, above quoted, making the 1927 law applicable to 1926 income, are altogether too clear and emphatic to justify serious consideration of such contention. By that section of the chapter the income of the year 1926 was subjected to all of the provisions of ch. 539, Laws of 1927. This plainly included the provisions with reference to liquidating dividends, and at the time the tax was imposed upon 1926 income the tax assessor found no authority in the statutes for the deduction of such liquidating dividends from income. Such liquidating dividends were by the terms of that chapter plainly subjected to an income tax.

A further contention is made that the three-year average provision of the income tax law is unconstitutional because it results in a discrimination between taxpayers. The brief contains hypothetical illustrations showing that upon assumed premises taxpayers who during a three-year period have the same income and the same losses may pay a different amount of taxes, depending upon the year in which the losses occurred. Thus, if during the first year of the averaging period the taxpayer sustains a loss without any taxable income, there are but two years left in which to absorb the loss, and, while it was the apparent intention of the legislature that only the difference between the income and the loss for the three-year period should be taxed, in the case of a taxpayer whose loss occurs in the first year only two-thirds of it is absorbed by the remaining two years. The same result occurs when the loss is sustained during the last year in which income is reported. In such case but one-third of the

loss is absorbed. Because of this resulting mathematical inequality it is claimed that the law is discriminatory and does not operate uniformly.

While our constitution requires a uniform rule of taxation, whether the legislative rule operates uniformly is not to be determined by hypothetical mathematical results from the application of the rule to various situations which human genius may devise. The inquiry rather is whether the rule itself is uniform and is to be applied to all alike. If it is a rule which is to be applied to all situations, it is not to be condemned because the result of its application may give rise to mathematical inequalities. Such inequalities can be readily conceived from the application of the old rule by which the income of one year was taxed in the next. Let us conceive of a situation where two taxpayers during a three-year period had a taxable income of $100,000, but during the same period had deductible losses of $50,000. Let us say that taxpayer A during the first year of the three-year period had a taxable income of $50,000. During the next year he had no income, but a loss of $50,000. During the third year he had a taxable income of $50,000. It is plain that during the three-year period he would pay an income tax on $100,000. Let us assume that taxpayer B during the first year of the period had a taxable income of $30,000 and a deductible loss of $20,000. His taxable income for that year was $10,000. For the second year he had a taxable income of $40,000 and a deductible loss of $20,000. For that year he had a taxable income of $20,000. For the third year he had a taxable income of $30,000 and a deductible loss of $10,000. For that year he had a taxable income of $20,000. Thus we see that taxpayer A during the three-year period pays an income tax on $100,000 while taxpayer B pays a tax on $50,000, yet for the three-year period their income and losses are equal. Because taxpayer A was so unfortunate as to sustain his entire loss during a

year when he had no taxable income, he was unable to enjoy the benefit of the deductions to which he would have been entitled had he sustained losses during years in which he also enjoyed income from which his losses could be deducted. The discrepancy is further emphasized by the fact that taxpayer A's income reaches into higher brackets. This indicates that no rule can produce an equality of results, and whether a rule be uniform cannot be judged by the results which the application of the rule produces. The rule must be held uniform if it applies to all alike, even though the results of the application of the rule may vary according to the vicissitudes of business. We must hold the law invulnerable to this attack.

Objection is further made that the law taxing liquidating dividends when distributed by a corporation that has paid taxes upon the profits which the liquidating dividends distribute to the stockholders, amounts to double taxation. We know of no objection to the legislature imposing a tax upon the income of corporations and also a tax upon the dividends received from the corporation by its stockholders. The earnings of the corporation constitute income received by it upon which the constitution authorizes the levy of a tax. The income received by stockholders in the form of dividends also represents income upon which the constitution authorizes the levy of a tax against the stockholder. In law the corporation and the stockholders are separate and distinct entities, and their earnings are plainly separate and distinct subjects of an income tax. The fact that the legislature has exempted dividends received from corporations which have paid an income tax upon their earnings is but a legislative concession. It is no indication that the legislature could not tax such dividends if it saw fit to do so, or that such taxation would constitute double taxation.

Doubt is expressed in the briefs as to whether the case of *Norris v. Tax Commission,* 205 Wis. 626, 237 N. W. 113 (on

rehearing 238 N. W. 415), does not prohibit the tax here in question. That case has no bearing upon this situation. Here the income was received by the taxpayer prior to his death. Having received it, he should pay an income tax on it. In the *Norris Case, supra,* the income had not been received prior to the testator's death. The court simply held in that case that the claims subsequently collected by his beneficiaries passed as a part of the corpus of his estate upon which his beneficiaries paid an inheritance tax, and that when they made collection it was not the collection of income but of corpus or capital which came to them through the inheritance laws.

The remaining questions presented by the appeal depend upon whether the record affords evidence to sustain the value which the county board of review placed on the stock, both preferred and common, of the United Milk Products corporation which Mr. West received as a part of his liquidating dividends from the Wisconsin Butter and Cheese Company. The board of review placed exactly the same value upon this stock that the executors placed upon it in their income tax report. We think the valuation which the executors themselves placed upon this stock constitutes evidence upon which the county board of review was authorized to act, and in view of that evidence their valuation of the stock cannot be disturbed. *Lewis v. Racine,* 179 Wis. 210, 190 N. W. 476.

*By the Court.*—Judgment affirmed.