Zweifel, Executrix, Respondent, vs. Tax Commission and another, Appellants.

*January 10—February 6, 1934.*

224

For the appellants there was a brief by the *Attorney General, F. C. Seibold,* assistant attorney general, *William A. Zabel,* district attorney of Milwaukee county, and *C. Stanley Perry,* assistant corporation counsel, and oral argument by *Mr. Seibold.*

For the respondent there was a brief by *Pellette & Zillmer* of Milwaukee, and oral argument by *Raymond T. Zillmer.*

NELSON, J. This appeal involves two controversies. The first controversy relates to the assessment of an additional income tax against the estate based upon an asserted sale of real estate on October 21, 1929, in which Frederick J. Zweifel had an interest. The second controversy relates to the assessment of an additional income tax against the estate based upon an asserted sale of real estate by the executrix on December 19, 1929.

The facts as to the first controversy are as follows: Frederick J. Zweifel and his sister, Mrs. Richard Schomberg, owned an undivided two-thirds interest in certain lands located in Milwaukee county. Zweifel was engaged in farming. Schomberg, his brother-in-law, was much more experienced in real-estate matters than was Zweifel. Prior to October 21, 1929, negotiations had been conducted by Schomberg with one Lane, who was interested in purchasing the real estate mentioned. Prior to October 21, 1929, Lane, to the knowledge of Zweifel, had paid to Schomberg the sum of $5,000 for an option to purchase the lands in question. On October 21, 1929, Zweifel and wife and Mrs. Schomberg executed and delivered to Schomberg a warranty deed in which the consideration was expressed as one dollar and other valuable considerations. At the same time Schomberg delivered to Zweifel his note for $33,000 due in six

months without interest. Thereafter, on November 7, 1929, Zweifel died suddenly. On November 12, 1929, Schomberg and wife conveyed the lands to Lane. On December 2, 1929, Schomberg paid to Louise Zweifel, as executrix, the sum of $33,000 without interest. A book account made up after the death of Zweifel showed a charge as of the date of Zweifel's death, against Schomberg, for $33,000 and payment thereof on December 3, 1929. The inventory prepared by the attorney for the estate on January 2, 1930, listed the $33,000 as "cash received shortly after the death on account due." The final account dated October 10, 1930, contained the following entry of cash received: "12/3/29, Schomberg, note paid, $33,000." Alfred J. Zweifel, a son of the deceased, who was a witness to the deed of October 21, 1929, and who was present at the time the deed was executed and delivered to Schomberg, testified positively that it was definitely understood between his father and Schomberg and all the parties present that the deed was merely an option given to Schomberg so that he might conveniently deal with Lane; that in case the deal fell through the real estate was to be reconveyed to Zweifel and Mrs. Schomberg, the note for $33,000 surrendered to Schomberg, and the $5,000 paid by Lane for the option divided equally between Zweifel and his sister Mrs. Schomberg. Mrs. Zweifel, the widow, who was also present and signed the deed, corroborated the testimony of Alfred J. Zweifel, the son. It appears without dispute that Richard Schomberg, Julius Schomberg, and a Mr. Backes, cashier of the West Side Bank of Milwaukee, were also present at the time the deed of October 21, 1929, was executed and delivered. None of the witnesses just mentioned were produced by the executrix or by the assessor of incomes for Milwaukee county. It appears that Zweifel and Schomberg were related by marriage and that close friendly and confidential relations existed between them.

The circuit court was of the opinion that the positive and undisputed testimony of Alfred J. Zweifel and Louise Zweifel was not overcome by any other testimony and no contrary inferences were permissible.

As to the second controversy, it appears that on December 19, 1929, Louise Zweifel, as executrix of the will of Frederick J. Zweifel, gave a deed to Schomberg conveying certain lands belonging to the estate for which she received an unsecured note of $51,333 without interest signed by Schomberg and payable to her as executrix. The lands covered by this deed were thereafter conveyed by Schomberg, who, on May 29, 1930, paid to the executrix the sum of $51,333. Alfred J. Zweifel and Louise Zweifel also testified that the deed of December 19, 1929, was a mere option and so understood by the parties thereto. The board of review found that this transaction resulted in a profit of $7,353 to the estate during the year 1929. The circuit court reached the same conclusion as to the December 19, 1929, transaction that it did as to the other.

The Tax Commission contends that the circuit court erred in vacating and setting aside the additional assessments.

The questions argued on this appeal are: (1) whether the delivery of the deed of October 21, 1929, to Schomberg, who gave to Zweifel his note for $33,000 payable in six months without interest, effected a completed sale giving rise to a taxable profit during the lifetime of Zweifel, or whether the deed was only an option which ripened into a sale after the death of Zweifel when the note was paid; (2) whether the delivery of the deed of December 19, 1929, signed by Louise Zweifel as executrix to Schomberg, who gave her his note for $51,333 without interest, effected a completed sale giving rise to a taxable profit to the estate in the year 1929, or whether the deed was only an option which ripened into a sale in 1930; (3) whether the note

given by Schomberg to Zweifel in his lifetime, which was not paid until after the latter's death, and whether the note given by Schomberg to Louise Zweifel, as executrix, which was not paid until the next year, gave rise to taxable income in the year when they were given.

There is nothing in the record suggesting an attempt by the estate to evade the payment of any income tax justly assessed against it. The sum of $33,000 paid by Schomberg to the executrix after the death of Zweifel was listed as a part of the corpus of the estate in the inventory made up on January 2, 1930. The land involved in the other deal was inventoried and appraised at the sum of $600 per acre, which, when deducted from the price for which it was sold, shows income to the estate for the year 1930 amounting to $7,353. An inheritance tax was computed and paid on the property as inventoried and appraised.

In the view we take it is unnecessary for us to determine whether the court below was right in holding that the board of review and the Tax Commission were wrong in concluding that the deeds of October 21, 1929, and December 19, 1929, were deeds rather than options resulting in taxable income to Zweifel and to his estate. Whether the evidence adduced before the board of review furnishes a substantial basis for the conclusion reached by the board (*Lewis v. Racine,* 179 Wis. 210, 190 N. W. 476), in other words whether the evidence was sufficient to sustain the finding (*Northwestern Lumber Co. v. Tax Commission,* 202 Wis. 372, 231 N. W. 865), we need not determine for the reason that in our opinion this controversy is clearly ruled in favor of the estate by two very recent cases: *Katz v. Tax Commission,* 210 Wis. 625, 246 N. W. 439, and *Lawrence v. Tax Commission,* 213 Wis. 273, 251 N. W. 242. In the *Katz Case* it was sought to subject the taxpayer to an additional assessment of income taxes based upon a sale of certain stock

under a contract which provided that a part of the consideration should be paid in cash and the payment of the remainder deferred. No security was given or retained by Katz to protect or assure the payment of that part of the consideration which was deferred. Katz reported his income on the cash basis and did not report as income the amount of that part of the consideration which was deferred and which he had not and might never receive. It was held under the facts of that case that that part of the consideration which was deferred was not income for the year in which the contract was entered into. *Wisconsin Ornamental I. & B. Co. v. Tax Commission*, 202 Wis. 355, 229 N. W. 646, 233 N. W. 72, and *State ex rel. Waldheim & Co. v. Tax Commission*, 187 Wis. 539, 204 N. W. 481, were discussed and distinguished. It was held that where one sells property to another (not as a part of his regular business but as an isolated deal) who pays a part of the consideration in cash and promises to pay the remainder in the future, the deferred payments should not be considered as income unless the transaction amounts to a reinvestment of the consideration, or unless the contract to pay is convertible into cash or its equivalent.

In the *Lawrence Case* there was involved an additional assessment of income taxes based upon the sale of all of the shares of stock in a corporation. In that case a part of the stock was delivered to the purchasers, who paid a certain amount of cash therefor. The remainder of the stock was delivered to the purchasers, who had it transferred to them on the books of the corporation and then delivered it to a trustee to be held by him in escrow as security for the payment of the deferred instalments of the purchase price. Lawrence had always reported his income on a cash receipt and disbursement basis. The evidence in that case showed that while the purchasers were solvent they were not men of outstanding means and were obliged to rely largely on the

profits of the business purchased to meet the deferred payments. It was there held that the additional tax assessed on the theory that the amount of the deferred payments should be considered as income was unjustifiable. It was there said:

"Of course, the idea of the income tax law is to tax income, and income is cash or its equivalent. It must be money or that which is convertible into money. *Income Tax Cases,* 148 Wis. 456, at p. 513, 134 N. W. 673, 135 N. W. 164. . . .

"The contract was secured only by the property which was the subject of purchase and sale. Upon default in payments, the seller had as security only that which he sold. If he was obliged to take it back, he realized no profit or income whatever. There was no evidence in the case to show that the contract could have been converted into cash."

In the present case, which involves wholly unsecured notes, there is no evidence tending to show that either of the notes could have been converted into cash or its equivalent.

In the absence of any evidence tending to show that the notes which bore no interest were convertible into cash, we conclude that the burden which rested upon the income tax assessor to prove that either Zweifel in his lifetime or his estate during the year 1929 received additional unreported income, was not met. While the circuit court reversed the Tax Commission on other grounds, the result reached and the judgment entered were in our opinion correct.

*By the Court.*—Judgment affirmed.