WOLLER, Appellant, v. DEPARTMENT OF TAXATION, Respondent. [Two cases.] *

*May 8—June 6, 1967.*

* Motions for rehearing denied, without costs, on September 11, 1967.

230

For the appellant there were briefs and oral argument by *George E. Frederick* of Milwaukee.

For the respondent the cause was argued by *E. Weston Wood*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

WILKIE, J.   As to case No. 161, the sole issue presented on this appeal is whether the tax department is entitled to the presumption of correctness of the assessment of additional taxes in 1956.

Sec. 71.11 (1), Stats., gives the department the power to assess incomes and also the power to estimate incomes.  Sec. 71.11 (4) provides that when a taxpayer makes a return that does not disclose his entire taxable income, the department has the power to assess his taxable income "according to their best judgment." When the assessment is disputed, as here, the burden of proof is on the taxpayer to show error in the additional assessment because the additional assessment is presumed to be correct.[2]  In *Laabs v. Tax Commission*[3] the taxpayer reported a sale of a patent and claimed a deduction for the experimental cost of development.  The court stated:

"In this state of the record the burden was upon plaintiff to isolate from the general expenses of the business such items as were properly chargeable to the development of the patent, and it cannot be said as a matter of law that plaintiff sustained this burden. The evidence is extremely unsatisfactory and inconclusive, and, having the burden of proof, plaintiff cannot now complain that the doubts were resolved against him by the trier of fact."[4]

---

[2] 27 Am. Jur., Income Taxes, p. 434, sec. 227.

[3] (1935), 218 Wis. 414, 261 N. W. 404.

[4] Id. at page 424.

In *Department of Taxation v. O. H. Kindt Mfg. Co.*[5]
the issue was whether there was substantial evidence to
support the finding of the WBTA that the amounts paid
as salaries to the taxpayer's officers were reasonable.
The court discussed the burden of proof as follows:

". . . The department points out that the burden of
proof is upon the taxpayer in cases of this kind to show
the incorrectness of the additional assessment. *Laabs v.
Tax Comm.* (1935), 218 Wis. 414, 424, 261 N. W. 404, and
*H. G. Weber & Co. v. Department of Taxation* (1946),
III WBTA 114. However, we fail to see how the question,
of who has the burden of proof, is of any materiality on
this appeal. It would only be material where either the
taxpayer or the department, or both, had failed to present
any evidence on the issue of reasonableness. This is be-
cause, where competent evidence is introduced by both
the taxpayer and the department before the board on the
issue in controversy, the reviewing court is only concerned
with whether there is substantial evidence in view of the
entire record to sustain the board's finding." [6]

These cases show that the burden of showing error in
an assessment is on the taxpayer. Failure to present any
evidence showing error means that the case must be de-
cided against the taxpayer.

But all of this presupposes a valid assessment. The
failure of the state in the case at bar was in its failure to
specify that the adjustment in taxable income and in
"additional income" was because of the disallowance
of deductions. The taxpayer received no notice that his
income-tax return for 1956 was being questioned because
of improper deductions. The assessment was incomplete
and invalid. Therefore, it was not presumptively correct.

---

[5] (1961), 13 Wis. (2d) 258, 108 N. W. (2d) 535.

[6] Id. at page 268. See also *W. R. Arthur & Co. v. Department of
Taxation* (1962), 18 Wis. (2d) 225, 232, 118 N. W. (2d) 168;
*Interstate Finance Corp. v. Department of Taxation* (1965), 28
Wis. (2d) 262, 273, 137 N. W. (2d) 38.

As to case No. 162, the issue presented on this appeal is whether substantial evidence supports the WBTA's conclusion that the taxpayer was not entitled to claim deductions for losses suffered when notes for commissions were transferred to a family benefit trust at 45 percent of the face value.

The WBTA's first premise is that the face amount of the notes was properly reported as income in the years in which the notes were received as payment for insurance premiums. In 2 Mertens, Law of Federal Income Taxation (Zimet rev.), ch. 11, p. 21, sec. 11.07, it is stated:

"Notes or other evidences of indebtedness received in payment for services also constitute income to the extent of their fair market value. That the notes were in fact paid in a subsequent year is a factor often considered in determining market value, although such fact alone is not conclusive of value at the time of receipt. It has been held that proof that the note was sold at a loss in a subsequent year does not by itself meet the burden upon the taxpayer to prove that the note had a fair market value less than its face amount when received."

Wisconsin cases hold that income is cash or its equivalent; i.e., it must be money or that which is convertible into money.[7] The notes in question are includable in the taxpayer's income only to the extent that they are convertible into money, i.e., their fair market value.

The tax department urges that the entire value of these notes is includable as income to the taxpayer because the taxpayer took these notes as part of the ordinary course of his business rather than in a single isolated transaction. The tax department argues that in the *Katz, Lawrence,* and *Zweifel cases,*[8] which it relies on, our court holds that

---

[7] *Zweifel v. Tax Commission* (1934), 214 Wis. 223, 252 N. W. 586; *Katz v. Tax Commission* (1933), 210 Wis. 625, 246 N. W. 439; *Lawrence v. Tax Commission* (1933), 213 Wis. 273, 251 N. W. 242.

[8] *Supra,* footnote 7.

notes received in the ordinary course of business are includable as income at face value. However, these three cases all involved notes received in isolated transactions so that holdings on the includability as income of the entire amount of notes received in the ordinary course of business is dicta. Moreover, this dicta is based on the cases of *State ex rel. Waldheim & Co. v. Wisconsin Tax Commission* [9] and *Motors Acceptance Co. v. Tax Commission,* [10] in both of which cases the court held that notes received in the ordinary course of business were includable at face value. However, in these two cases the taxpayer was on an accrual method of income determination. In the case at bar the taxpayer uses a cash basis method of income determination so that only actual cash received or its equivalent should be held to be income. Hence, only the fair market value of the notes in question can be considered income to the taxpayer. Proof of any difference between the face value of the notes and the fair market value of the notes must be supplied by the taxpayer.

To meet his burden, appellant taxpayer contends that the fair market value of the notes in question can be established by the sale to his family trust. We have held that deductible losses under the income-tax statute must be established by closed transactions. [11] Analogously, a determination of the fair market value of appellant's notes must be made by a closed transaction at arm's length between appellant and an independent buyer. The sale of the notes to this family trust, set up for the benefit of the taxpayer's children, is not such a transaction. Evidence offered by appellant does not dispute the finding

[9] (1925), 187 Wis. 539, 204 N. W. 481.

[10] (1927), 193 Wis. 41, 214 N. W. 64.

[11] *Bissell v. Tax Commission* (1940), 234 Wis. 421, 291 N. W. 325; *Harvey v. Department of Taxation* (1949), 254 Wis. 220, 35 N. W. (2d) 906.

of the board that appellant made no attempt to sell the notes to anyone other than the trust.

Appellant reported the face value of the notes as income and then attempted to deduct the difference between the face value of the notes and the amount received from the trust as unpaid commissions. Proof that appellant was entitled to these deductions must be presented. There was little proof on this issue. Appellant testified generally that the value of the notes was determined by an appraisal based on credit information and information on character and personal habits. However, this information was often unavailable and in most cases the notes were sold to the trust at a flat 45 percent of face value. Furthermore, there was no evidence presented of the value of any specific note. Appellant always dealt in generalities and never articulated why a specific note was worth 45 percent, although he was specifically questioned about many individual notes.

Appellant had an independent appraiser put on the stand, who had helped determine the value of the notes. This appraiser did not know the date the appraisals were made, was vague on how the evaluations were arrived at, and was unable to state which appraisals were based on credit reports. In short, appellant's appraiser was never able to testify what the basis was for an evaluation of any particular note, nor did he indicate the method used for evaluating the notes in general.

Many of the notes were paid in full after they had been transferred to the trust. Although no exact figure appears in the record, the trust tax returns indicate the percentage of collection was very high.

The WBTA concluded that the difference between the face amounts of the notes and the amounts for which they were sold to the trust was not deductible. Under a reasonable view of the evidence of the entire record, this conclusion is supported. Appellant was using the trust as an artifice to transfer his own income to the trust for the

benefit of his family. Through this scheme appellant tried to have the income taxed at a lesser rate than his own rate of taxation. The evidence indicates that appellant's method of evaluating the notes was very vague and unexacting, and the WBTA was justified in rejecting it as a method of determining what the notes were actually worth.

*By the Court.*—Judgment reversed as to case No. 161; affirmed as to case No. 162.